Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Disposiciones del Código Electoral<br>De Puerto Rico para el Siglo XXI | 2012 TSPR 7<br><br>184 DPR \_\_\_\_ |

Número del Caso: EM-2012-01

Fecha: 12 de enero de 2012

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Disposiciones del Código
Electoral de Puerto Rico                    EM-2012-01
para el Siglo XXI

RESOLUCIÓN

San Juan, Puerto Rico, a 12 de enero de 2012.

Como es sabido, recientemente se aprobó la Ley Núm. 78 de 1 de junio de 2011, según enmendada, para autorizar, disponer y reglamentar todo lo relacionado al sistema electoral de Puerto Rico, adoptar el Código Electoral de Puerto Rico para el Siglo XXI, y, entre otras cosas, derogar la Ley Núm. 4 de 20 de diciembre de 1977, *según enmendada*, denominada Ley Electoral de Puerto Rico.

Entre las disposiciones que se incluyen en este nuevo ordenamiento electoral se encuentran aquellas dirigidas a modificar la forma y manera en que se asignan los jueces y las juezas que participan de los procesos electorales en el País. Al respecto, los Arts. 3.008, 4.005 y 5.002 del nuevo Código Electoral requieren que los jueces que vayan a trabajar en asuntos relacionados a una posible destitución del Presidente, Alterno al Presidente o Vicepresidentes de la Comisión Estatal de Elecciones (Art. 3.008), en las acciones y procedimientos judiciales, civiles o penales, que dispone y reglamenta este nuevo Código (Art. 4.005) o aquellos que vayan a fungir como Presidentes o Presidentes Alternos de las Comisiones Locales de Elecciones (Art. 5.002), sean seleccionados, para desempeñar dichas tareas, mediante un método aleatorio a ser determinado por este Tribunal.

In re:
Disposiciones del Código Electoral de
Puerto Rico para el Siglo XXI                                    2

A los fines de poder cumplir adecuadamente con la mencionada exigencia de ley, le encomendamos al Dr. Rubén Vélez García, Perito en Estadísticas, y Psicómetra de la Junta Examinadora de Aspirantes al Ejercicio de la Abogacía y la Notaría por los pasados quince (15) años, que realizara un estudio sobre este particular y nos preparara una propuesta que atendiese todo lo relacionado al referido proceso de asignación de jueces, conforme las disposiciones de la citada legislación.

Cumpliendo con lo encomendado, el pasado martes 3 de enero de 2012, el doctor Vélez García, en una Sesión Especial del Pleno de este Tribunal, nos realizó la presentación de rigor.

Evaluada la presentación del doctor Vélez García, así como sus sugerencias, y en aras de cumplir con lo dispuesto en los Arts. 3.008, 4.005 y 5.002 del nuevo Código Electoral, este Tribunal acuerda seleccionar todos los jueces y juezas que participarán de los procesos electorales en el país mediante el método aleatorio conocido como **método de selección aleatoria simple con reposición** (SASR, por sus siglas en español). Dicho método es el más comúnmente utilizado, el más sencillo y la base para todos los demás métodos de muestreo probabilístico. Este es el método que se utiliza en la mayoría de los casos, tales como loterías (tradicional o electrónica), bingos y rifas por tómbolas (aunque en estos dos últimos se utiliza sin reposición). Es similar también al que se utiliza para selecciones aleatorias en los contextos académicos y de investigación científica.

Este método cumple con los dos objetivos fundamentales de la aleatoriedad: (1) llevar a cabo una selección sin que exista ningún sesgo previo a la misma, y (2) que cuando se realicen múltiples selecciones consecutivas, los elementos que componen el conjunto de donde se hace la selección tengan igual probabilidad de ser seleccionados.

Según los estudiosos de este tema, tradicionalmente las técnicas para la aplicación del método de selección aleatoria simple con reposición han sido manuales, ejemplos de los cuales son las tómbolas, las cajas o bolsas opacas y las tablas de números aleatorios para los contextos académicos y científicos. Con el advenimiento y accesibilidad de la tecnología, algunas de estas técnicas migraron hacia los formatos electrónicos.

Así pues, el método que hoy aprobamos contempla utilizar una técnica similar conocida como la "función aleatoria" existente en los lenguajes de programación. El uso de esta técnica incorpora las ventajas que ofrecen todas las demás alternativas (control de los sesgos de pre-selección mediante la "selección a ciegas"), selección aleatoria

In re:
Disposiciones del Código Electoral de
Puerto Rico para el Siglo XXI                              3

simple con reposición, así como una gran facilidad y sencillez de implantación con un mínimo de adiestramiento. Además, introduce y ofrece la mayor salvaguarda contra uno de los riesgos de otras técnicas: la seguridad y confiabilidad. La función aleatoria estará integrada dentro de una aplicación que debe diseñarse para atender los tres escenarios que dispone el Código Electoral de Puerto Rico para el Siglo XXI en los Artículos 3.008, 4.005 y 5.002.

Establecido lo anterior, este Tribunal ha determinado que el procedimiento general para la implantación del método de selección aleatoria simple con reposición en cada escenario será el siguiente:

- Seleccionar el escenario para el cual se desea hacer la selección, a tenor con los Artículos 3.008, 4.005 y 5.002;

- identificar las condiciones y circunstancias que aplican al escenario en particular;

- determinar cuántos jueces y/o juezas es necesario seleccionar;

- tomando en cuenta dichas condiciones y circunstancias, generar el conjunto de jueces y juezas hábiles para ocupar las posiciones requeridas;

- invocar el procedimiento SASR consecutivamente cuantas veces sea necesario
  -Ignorar las selecciones que se repitan, sin que ello impida que un juez o jueza pueda ser seleccionado en más de un escenario, conforme a los Artículos 3.008, 4.005 y 5.002.

  -Repetir el procedimiento hasta que se completen todas las selecciones necesarias;

- cambiar de escenario y repetir el procedimiento.

De igual forma, y para cumplir con las disposiciones del Código Electoral de Puerto Rico para el Siglo XXI a la que hemos hecho referencia, inicialmente deberá utilizarse un modelo de "aleatorización absoluta"; es decir, todas las posiciones relacionadas con la asignación de jueces a los procesos electorales se considerarán vacantes y se reasignarán utilizando el método aquí propuesto, de manera que todas las posiciones quedarán con asignaciones

In re:
Disposiciones del Código Electoral de
Puerto Rico para el Siglo XXI                          4

seleccionadas aleatoriamente. En lo sucesivo, se utilizará un modelo de "aleatorización por demanda", seleccionando periódicamente jueces y juezas para las vacantes que surjan mediante el método aquí propuesto.

Por último, es menester señalar que para garantizar la suficiencia y la eficiencia en las asignaciones, en la medida en que aplique y sea posible, deberán aplicarse los siguientes principios:

- Se asignarán Jueces Municipales primero, luego Jueces Superiores de la propia Región Judicial;

- en Regiones Judiciales con más precintos que Jueces, se considerarán Jueces y Juezas de otras regiones circundantes;

- los Jueces Administradores y Sub-Administradores de los Centro Judiciales no se considerarán para las asignaciones;

- Los únicos jueces o juezas que no participarán de este proceso serán aquellos jueces o juezas que sufran de alguna indisponibilidad temporera (enfermedad incapacitante y maternidad)

Así las cosas, se ordena a la Directora de la Oficina de Administración de los Tribunales que una vez reciba la notificación de la presente Resolución, a la brevedad posible, tome las medidas correspondientes para implantar el método aleatorio aquí dispuesto para la selección de los jueces que vayan a trabajar en asuntos relacionados a una posible destitución del Presidente, Alterno al Presidente o Vicepresidentes de la Comisión Estatal de Elecciones que dispone el Art. 3.008, en las acciones y procedimientos judiciales, civiles o penales, que dispone y reglamenta el Art. 4.005 o aquellos que vayan a fungir como Presidentes o Presidentes Alternos de las Comisiones Locales de Elecciones según lo dispuesto en el Art. 5.002 del Código Electoral. La Directora Administrativa de los Tribunales deberá tomar las medidas correspondientes para que se haga una grabación visual de los procedimientos aquí señalados que estará disponible para las personas interesadas. Disponiéndose, además, que la Directora de la Oficina de Administración de los Tribunales notificará con no menos de cuarenta y ocho (48) horas previo a cada procedimiento, al Presidente de la Comisión Estatal de Elecciones y a los Comisionados Electorales, a fin de que puedan designar observadores durante cada proceso de selección. Realizadas las referidas selecciones, se levantará un Acta por un Notario la cual la Directora Administrativa de los Tribunales deberá notificar en un término de veinticuatro (24) horas a la Secretaria de

In re:
Disposiciones del Código Electoral de
Puerto Rico para el Siglo XXI                              5

este Alto Foro y al Presidente y a los Comisionados Electorales de la Comisión Estatal de Elecciones.

A su vez, la Directora de la Oficina de Administración de los Tribunales deberá notificar por escrito a cada uno de los Jueces y Juezas de este Tribunal el resultado de las referidas selecciones. Esta notificación deberá realizarse en cada ocasión que se realice una selección aleatoria de jueces.

Publíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| In Re:<br><br>Disposiciones del Código Electoral de Puerto Rico para el Siglo XXI | EM-2012-01 |  |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 12 de enero de 2012

> "Como yo fundamentalmente no soy más que palabra, el no hablar es morir y francamente, a morir no estoy dispuesto".
> -Miguel de Unamuno[1]

Nuevamente no puedo permanecer silente ante una actuación que considero golpea la Constitución de Puerto Rico. Por estimar que la disposición del nuevo Código Electoral en torno a que el "Tribunal Supremo, mediante Resolución, determinará el método aleatorio a utilizarse para la selección de jueces"[2] constituye una irrupción indebida con las facultades constitucionales del Juez Presidente, me veo en la obligación de disentir. En estas circunstancias, más que una obligación, disentir deviene en un deber.

---

[1] Miguel de Unamuno, 18 de noviembre de 1917, Casa Museo Miguel de Unamuno, Salamanca, España.
[2] Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78 de 1 de junio de 2011, según enmendada, Art. 4.005 (en adelante, Ley Núm. 78).

La Resolución que hoy se aprueba, como exigencia del nuevo Código Electoral, me obliga a una reflexión y consideración pausada y concienzuda sobre disposiciones de nuestra Ley Suprema en torno a las funciones y prerrogativas del Juez Presidente como administrador de la Rama Judicial. Si analizamos detenidamente el Artículo V, Sección 7 de nuestra Constitución, así como la intención que de allí se desprende y que se discutió durante las sesiones de la Convención Constituyente y que además ha permeado a lo largo de seis décadas en nuestra jurisdicción, es forzoso concluir que el artículo 4.005 de la Ley Núm. 78 es inconstitucional.

La Constitución de Puerto Rico establece claramente: "El Juez Presidente **dirigirá la administración de los tribunales**". Const. P.R. Art. V, Sec. 7 (énfasis suplido). En los debates de la Convención Constituyente incluso se propuso eliminar la función del Juez Presidente como administrador de los tribunales de justicia, pero tal enmienda propuesta fue derrotada. *Diario de Sesiones de la Convención Constituyente*, 616-18 (1961). Por lo tanto, los delegados de la Convención Constituyente quisieron y reafirmaron que la administración de los tribunales recaiga **sólo en la figura del Juez Presidente**.

Más aún, en torno a un debate sobre el nombramiento del director administrativo de los tribunales de justicia, el delegado Sr. Ramos Antonini hizo hincapié en que el propósito de la Sección 7 del Artículo V es que la administración de los tribunales la asuma exclusivamente el

Juez Presidente.[3] Comenta el delegado Ramos Antonini que con el proceder de la Convención Constituyente se busca proteger al Juez Presidente "en el desempeño de su responsabilidad y descargue de su autoridad para que pueda cumplir con la encomienda de la constitución que le dice que él dirigirá la administración [de los tribunales]". *Id.* en la pág. 1667.

Según el debate y desarrollo intelectual que se desprende del Diario de Sesiones de la Convención Constituyente, es claramente palpable la intención de proteger la figura del Juez Presidente como único administrador de los tribunales de justicia. Así, ante varios intentos de enmiendas para restringir las funciones administrativas del Juez Presidente, los delegados de la Convención Constituyente se opusieron tenazmente a cualquier limitación a la encomienda y responsabilidad del Juez Presidente de dirigir y administrar libremente y según su propio criterio las faenas de la Rama Judicial. *Véase id.* en las págs. 1666-70.

Ahora bien, el análisis jurídico que nos lleva a concluir que la exigencia del nuevo Código Electoral que se recoge en la Resolución aprobada hoy es inconstitucional no termina ahí. Todo lo contrario, es menester que identifiquemos cuáles son esas facultades y prerrogativas que la Constitución le asignó al Juez Presidente. Para ello es de harta utilidad que recurramos a textos coetáneos a la

---

[3] "El propósito de este artículo es el de que la responsabilidad de la administración de los tribunales de justicia recaiga en el presidente del Tribunal Supremo". *Diario de Sesiones de la Convención Constituyente*, 1667 (1961).

Constitución y que abordan sobre ella. Así podremos tener una visión más completa de la intención tras la disposición constitucional en cuestión. Con este proceder coincidimos con la teoría de Juan Vallet de Goytisolo al efecto de que:

> El jurista, al aplicar el Derecho, se halla . . . en una situación absolutamente análoga a la del historiador . . . . Debe comprender una acción humana pasada y, por eso, le hace falta reproducir en su propio pensamiento el del legislador o del juez. Éste será el primer paso de su busca, reconstruir la imagen que el autor de la regla tenía de la situación social que reguló.

Juan Vallet de Goytisolo, *Panorama del Derecho Civil,* 84 (2da ed. 1973). La examinación de esos textos coetáneos a la Constitución en adición a otros documentos y leyes más recientes, pero con la misma filosofía de fondo, nos llevan a concluir que esa visión sobre la función del Juez Presidente no fue estática, sino que nuestro ordenamiento jurídico siempre ha reconocido como parte de nuestro sistema constitucional que las prerrogativas del Juez Presidente como eje administrador de la Rama Judicial son las que hoy defendemos, contrario a lo que se dispone en la Resolución aquí adoptada. Veamos.

La figura del Juez Presidente como administrador de los tribunales de justicia incluye, entre otras, la de asignar los jueces que atenderán los casos según su mejor entendimiento. En otras palabras, es prerrogativa de ese cargo escoger a los jueces que van a trabajar en particulares asuntos o casos. Ésa fue la intención de los redactores de la Constitución, como se ejemplifica a continuación:

> Section 7 specifies that . . . [t]he Chief Justice is placed in charge of the administration of the courts and is given the power to appoint an administrative director to serve at his pleasure.
>
> Administration of the courts was understood by the Convention to mean not only performance of the routine "housekeeping" functions but also conduct of the judicial business of the courts. **The most important aspect of the latter is the assignment of judges and cases** in order to relieve congested dockets, distribute work equitably among the judges, and prevent delays costly to litigants.

*Notes and Comments on the Constitution of the Commonwealth of Puerto Rico*, 92 (1952) (énfasis suplido) (es meritorio destacar que quien escribió el prefacio de esas notas y comentarios fue el Dr. Antonio Fernós Isern, Presidente de la Convención Constituyente).

Esa intención de que sea el Juez Presidente quien asigne a los jueces que atenderán los asuntos en todos los tribunales de justicia incluso se recogió en el Artículo 2.012 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. Sec. 24j. Prescribe dicho artículo:

> El Juez Presidente del Tribunal Supremo dirigirá la administración del Tribunal General de Justicia, será responsable del funcionamiento eficiente de los tribunales, promoverá la responsabilidad de los jueces en la ejecución de sus obligaciones judiciales y velará por el cumplimiento de los principios y objetivos de esta Ley.
>
> **A tenor con lo dispuesto por la Constitución del Estado Libre Asociado de Puerto Rico respecto a un sistema judicial unificado, el Juez Presidente asignará a los jueces para celebrar sesiones en el Tribunal de Primera Instancia,** asignará los jueces a los diversos paneles del Tribunal de Apelaciones . . . . (énfasis suplido)

Bien es cierto que en nuestro sistema de derecho una ley posterior puede derogar una ley anterior tácitamente cuando la posterior contenga disposiciones contrarias o irreconciliables con la primera. Cód. Civ. P.R. Art. 5, 31 L.P.R.A. Sec. 5. *Véase además* Luis Muñiz Argüelles & Migdalia Fraticelli Torres, *La investigación jurídica en el derecho puertorriqueño: fuentes puertorriqueñas, norteamericanas y españolas*, 283-84 (4ta ed. 2006). No obstante, es inaudito que una ley posterior derogue una ley anterior que claramente se fundamenta en una disposición constitucional. Tal proceder equivaldría a una derogación tácita de un mandato constitucional por fíat legislativo. Eso sería impermisible. Lamentablemente, con la Resolución que hoy se adopta se valida lo inaudito, lo impermisible, lo antijurídico, lo inconstitucional.

En fin, la Ley Núm. 78 dispone que será el Pleno del Tribunal Supremo, no el Juez Presidente, quien determine el método aleatorio de selección de jueces que atenderán los asuntos relacionados al proceso electoral del País. Esa disposición estatutaria es inconstitucional porque irrumpe con las funciones constitucionales provistas al Juez Presidente. Es lamentable que se valide dicho estatuto en un intento inconstitucional de absorber mayores esferas de poder no delegado en ánimo de establecer un estado acéfalo de administración de la Rama Judicial.

Anabelle Rodríguez Rodríguez
Juez Asociada